Page 1

[1]  UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK

[3]  PIONEER TRADING (ASIA PACIFIC)
     LTD.,

     Plaintiff,

     v.       04 CIV 5655 (DAB)

     SEYANG SHIPPING COMPANY,
     LTD.,

     Defendant.

                August 19, 2004
                11:15 a.m.

     Before:

         HON. DEBORAH A. BATTS,

              District Judge

              APPEARANCES

     HEALY & BAILLIE, LLP
        Attorneys for Plaintiff
     BY: LEROY LAMBERT

     NOURSE & BOWLES, LLP
        Attorneys for Defendant
     BY: ARMAND M. PARE

Page 2

THE COURT: Good morning. Please be seated. Pioneer Trading Ltd. versus Seyang Shipping Company Ltd.

On behalf of the plaintiff we have Mr. Lambert?

MR. LAMBERT: Yes, your Honor. Good morning.

THE COURT: And on behalf of the defendant we have Mr. Pare?

MR. PARE: Yes, your Honor.

THE COURT: Good morning.

Now, the issue initially seems to be whether or not at the time that the plaintiff filed its papers seeking the garnishment, that indeed the defendant was, quote, not to be found in the district.

I have reviewed the plaintiff's papers and the defendant's papers, and I have seen what the plaintiff did in ascertaining whether or not the defendant was here, and I have seen the response of the defendant.

Now, Mr. Lambert, was there any reason that the Secretary of State was not served?

MR. LAMBERT: Your Honor, we have 120 days to serve the complaint, and what we were after is quasi in the realm of jurisdiction, trying to get the property in this District, and —

THE COURT: All right. So, I guess my question is: What was the basis for that if, indeed, he was, the defendant

Page 3

was found in the district?

MR. LAMBERT: The person registered as the corporation under New York law with the Secretary of State was a New York corporation of the same name. Our defendant is a Korean corporation.

There is no dispute that the defendant is the Korean corporation and it's an interesting point, but there is simply no allegation that, say, I will call them Seyang New York is doing the business of Seyang Korea in this District or New York at all.

So, I, frankly — I mean, since I'm the one who did the affidavit of search, I was tempted just to stop there, as we say, in the brief. They could have incorporated Smith Brother's Shipping. It's a separate entity and I am not alleging veil piercing.

THE COURT: You are not alleging veil piercing?

MR. LAMBERT: No, I am not, as Seyang New York and Seyang Korea.

THE COURT: Let me hear from Mr. Pare.

MR. PARE: We do not think that that is the critical issue in this case, and the reason for that is that it is not clear that any funds have been attached by the first round of attachments. We think that the critical issue in this case is whether future attachments should be permitted or whether instead, the case should be stayed pending arbitration, as

Page 52

but in the meantime there was a general appearance; that is all he said.

What he actually did was to vacate the previous attachment. I don't believe it's as clear as Mr. Pare makes it out to be. We address these issues in our briefs, refer to the Oilmar case, and also the MidAfrica case, Judge Lowe's case. Again, that was a secondary holding as it were. She already reached her main holding on why the attachment should be vacated.

But if you look at the purposes of Rule B, in light of the present day prevalence of maritime disputes being reduced, maritime disputes being resolved by arbitration, then I think the issue needs to be addressed and clarified because you have your general appearance in the arbitration, that's where the merits are being decided.

**THE COURT:** But I also have a general appearance in a case before me, and it was in this court that the writ of attachment was issued, and that — that is my concern here.

Let me — bear with me just one second. Where is the order that was signed by Judge Hellerstein?

All right. I am looking at the the order Judge Hellerstein signed. Is it, I take it, Mr. Pare, the bottom of page three, the order that says ordered, that supplemental process enforcing the court's order may be issued by the clerk upon application without further order of the Court. Is that

Page 53

what you are challenging?

**MR. PARE:** Yes, your Honor.

**THE COURT:** And that's it, what you are challenging?

**MR. PARE:** Well, the whole concept. Not just the phraseology of the order, but the whole concept, my opponent saying I now have the right to go ahead and do that.

**THE COURT:** All right.

**MR. LAMBERT:** Your Honor, may I just point out that that language tracks Rule 1(b).

**MR. PARE:** But it doesn't come in a vacuum; it comes with all the maritime law associated with it.

**MR. LAMBERT:** The clerk may issue supplemental process enforcing the court's order on application without further court order.

**THE COURT:** Yes. Well you know what, I think isn't that under certain circumstances like of an emergency nature?

**MR. LAMBERT:** No, your Honor. Because once I have made my showing that he could be found, I can try to find property wherever I can without bothering the court again.

Just let me volunteer something, your Honor. If, if your Honor wishes to take the decision under advisement, I will certainly undertake not to seek such writs without coming to you first.

**THE COURT:** Well, let me do better than that. It seems to me that Mr. Pare has a weighty argument in terms of

Page 54

the impact of a general appearance on these orders of attachment, and it would be difficult for me to say that it makes sense to continue beyond the appearance the force and effect of the order of attachment based on the case law and the understanding of the function of it.

Yes, it does have a dual purpose under Rule B of security as well as appearance, but I cannot see in the materials submitted and the cases discussed a statement that the security interest continues once the appearance has been made and, therefore, a continuing order of attachment is appropriate.

So, under those circumstances, I am ruling in favor of the defendant, and my ruling would be to nunc pro tunc that part of the order signed on July 21st, to eliminate that phrase that talks about supplemental process enforcing the Court's order may be issued without further order of the Court. That part is stricken and, therefore, the order of attachment is valid up to the point of the time of a general appearance, since the general appearance was made.

When did you file your appearance, Mr. Pare?

**MR. PARE:** I think it was August 6th, if I am not mistaken, your Honor.

**THE COURT:** So anything between July 21st and August 6th is fair game, and that has turned up nothing as I understand it. And I am terminating the impact of that order

Page 55

of July 21st as of this point because of the appearance, the general appearance of the defendant in this case.

I am staying this proceeding, I imagine pending results of the arbitration going on in London.

Are there any other matters that we need to deal with in this case at this time?

**MR. LAMBERT:** Your Honor, could I just ask for a clarification on the stay? Because again, as I said, I think there are eight or nine garnishees that I have not formally heard from.

I think, I will let Mr. Pare address it, if I could just keep the action alive for the purpose of vetting the — in other words, we served them with a garnishment, as well as interrogatories, and we asked them questions. Do you have money? Have you had money? And I don't have proper answers. And this just happened the end of July. I have 20 days to do that.

Is it clear that I still have the right to finish that up, all relating — I'm not going to serve any more attachments.

**THE COURT:** You have the right to finish it up in terms of monies in the account prior to August 6th.

**MR. PARE:** Yes, your Honor, I believe so.

**THE COURT:** August 6th. So anything that they had in that account between July 21st and August 6th would be subject

Page 56

[1] to the order of attachment signed on the 21st.
[2] Mr. Pare?
[3] MR. PARE: Yes. The only point at which I would, this
[4] is the point I would make. Under Rebore it only attaches money
[5] that is actually in any account or in any bank at the moment of
[6] the levy. If the money comes in, the next day under Rebore, it
[7] doesn't attach it.
[8] Now, if my opponent had made a second attachment on
[9] August 2nd or August 3rd or August the 4th and gotten money,
[10] then, yes, that would be attached. But the fact that he made
[11] an attachment on July the 21st —
[12] THE COURT: Did you make the attachment on July 21st?
[13] MR. LAMBERT: I made an attachment, I would say, on
[14] maybe 12 or 13 of the banks. I only did it once. Whether it
[15] was July 21 or July 22 or July 23, I don't remember.
[16] On three or four of the banks, I did go up once in the
[17] morning, once in the afternoon and the next day.
[18] Reflecting what Mr. Pare just said, I'm trying to
[19] serve it at a time when the bank actually has one of these
[20] transfers coming through and that's what I would like to vet.
[21] It does seem to me that the record on that issue is closed. I
[22] either got something or I didn't. But I am entitled to an
[23] efficient response from the banks about whether I did or
[24] didn't, and did they do what they were supposed to do in
[25] response to my writ.

Page 57

[1] THE COURT: All right. So, then let me modify what I
[2] just said.
[3] That under Rebore it would seem that on the day that
[4] the attachment was, excuse me, served on the bank, that is
[5] what's at issue, not forward. So that if you served on July
[6] 23rd, any funds in the bank up to July 23rd would be subject to
[7] the attachment.
[8] MR. PARE: Not exactly. Under Rebore, the moment, not
[9] the day, if the money the attachment is leveled at 12 o'clock
[10] noon on August the 1st, and there is money there, at that time,
[11] Rebore says the attachment validly reaches the money. If the
[12] money comes in at one o'clock, it does not.
[13] THE COURT: And how are we keeping track of what time
[14] the attachment was actually entered?
[15] MR. PARE: That is the subject of Rebore and cases
[16] that have followed it and it gets to be pretty picayune. We
[17] don't have that case before you. A lot of times you bring in
[18] the bank officer, you bring in the statements and there is
[19] testimony.
[20] MR. LAMBERT: Our process server notes the time and
[21] you get into issues about, does the bank, how much time does
[22] the bank have to respond, and — but these are the types of
[23] issues I would like — I don't want the action stayed so as to
[24] preclude me, and I don't think Mr. Pare is objecting to vetting
[25] those issues about what the bank did or did not do, whether

Page 58

[1] there were, there were or were not funds at the time I served
[2] the process.
[3] THE COURT: All right. So then —
[4] MR. LAMBERT: I don't think we need to get so far into
[5] Rebore. I don't think you need to make a prospective ruling
[6] under Rebore until we find out whether there is any issue at
[7] all.
[8] THE COURT: Whether?
[9] MR. LAMBERT: Whether we ever got anything.
[10] THE COURT: Let me say in terms of the merits of the
[11] case, obviously that is what I am saying.
[12] Until further action in the arbitration, should you
[13] wish to bring this back to me then either confirming or
[14] whatever, then we will deal with that at that time.
[15] In terms of the actual writ, however, if there are
[16] issues about when the levy was made, and when there were funds,
[17] I would keep that open, and you can bring that in, and we will
[18] deal with that in terms of whatever proof you have, whatever
[19] disagreements you have on that. But I am not of the school
[20] that once an appearance has been made further levies are
[21] appropriate, and I am also — well, I guess that's as far as I
[22] need to go.
[23] Are there any other issues that we need to deal with
[24] in this case at this time? Mr. Lambert?
[25] MR. LAMBERT: Your Honor, speaking for my client, as

Page 59

[1] well as the bar in general, it would be of service to the bar
[2] if your ruling today could be made in a fashion that we could
[3] publish it to the bar, whether it has to be a formal opinion
[4] or —
[5] THE COURT: Well, I will tell you what I will do. I'm
[6] going to order this transcript on a daily basis and I am going
[7] to split the cost between the parties. And since I have made
[8] my ruling on the record and giving you my reasons therefore,
[9] and it is also including your wonderful arguments, I think that
[10] should make it pretty clear.
[11] All right?
[12] MR. LAMBERT: Thank you, your Honor.
[13] MR. PARE: Thank you, your Honor.
[14] THE COURT: All right. This matter is adjourned.
[15] Please see Bonnie.