HEALY & BAILLIE, LLP
Jeremy J. O. Harwood (JH 9812)
Jack A. Greenbaum (JG 0039)
Jana N. Byron (JB 6725)
Attorneys for Defendant
Proteinas Y Oleicos S.A. De C.V.
61 Broadway
New York, NY 10006-2701
(212) 943-3980

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HBC HAMBURG BULK CARRIERS
GMBH & CO. KG,

04 CV 6884 (NRB)
***ECF CASE***

Plaintiffs,

-against-

PROTEINAS Y OLEICOS S.A. DE
C.V.,

Defendants.

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE MARITIME ATTACHMENTS, BAR FURTHER ATTACHMENTS, AND DISMISS THE ACTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1

FACTS REGARDING THE FROZEN EFTS...............................................3
    The EFTs Frozen By Citibank...................................................4

    The Cargill EFTs Frozen By Bank of America........................4

    Additional EFTs Frozen By Bank of America. ........................5

ARGUMENT..............................................................................................6

    POINT I....................................................................................6
    MOST OF THE EFTS WHICH HAVE BEEN FROZEN ARE NOT
    SUBJECT TO ATTACHMENT BECAUSE THEY WERE NOT
    PROTEINAS' PROPERTY AT THE TIME THE ATTACHMENTS
    WERE LEVIED ......................................................................6

    POINT II ...............................................................................11
    THE EFTS FROZEN BY BANK OF AMERICA ARE NOT SUBJECT
    TO THE PMAG BECAUSE THEY ARE NOT WITHIN THIS
    DISTRICT .............................................................................11

    POINT III .............................................................................13
    PLAINTIFF SHOULD BE BARRED FROM SERVING FUTURE
    WRITS OF ATTACHMENT AND FUNDS FROZEN AFTER
    DEFENDANT FILED A GENERAL APPEARANCE SHOULD BE
    RELEASED ...........................................................................13

CONCLUSION.........................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cocotos S.S. of Panama v. Sociedad Maritime Victoria,* 1957 A.M.C. 397,
399 ................................................................................................................. 16

*D/S A//S Flint v. Sabre Shipping Corp.*, 228 F. Supp. 384 (E.D.N.Y. 1964),
aff'd *Det. Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341
F.2d 50 (2d Cir. 1965)............................................................................ 11, 12,
14

*Diakan Love, S.A. v. Al-Haddad Brothers*, 584 F. Supp. 782 (S.D.N.Y.
1984)............................................................................................................. 16

*Digitrex, Inc. v. J. Howard Johnson*, 491 F. Supp. 66 (S.D.N.Y. 1980)................ 12

*Fernandes v. United Fruit Co.*, 303 F. Supp. 681 (D.C. Md. 1969) ...................... 16

*Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee
Corp.*, 921 F. Supp. 1113 (S.D.N.Y. 1996) ........................................................ 12

*Limonium Maritime, S. A. v. Mizushima Marinera, S. A.*, 961 F. Supp. 600
(S.D.N.Y. 1997); aff'd. without opinion, 201 F. 3d 431 (2d Cir. 1999); ..11, 12

*M/V Point Vail*, 901 F.2d 1044 (11th Cir. 1990)...................................................... 16

*Maryland Shipbuilding & Dry-dock Co. v. Pacific Ruler Corp.*, 201 F.
Supp. 858 (S.D.N.Y. 1962)............................................................................. 15

*Motorola Credit Corp. v. Kemal Uzan*, 288 F. Supp. 2d 558 (S.D.N.Y.
2003)............................................................................................................... 13

*National Shipping & Trading Corp. v. Weeks Stevedoring Company*, 252 F.
Supp. 275 (S.D.N.Y. 1966) ............................................................................ 11

*Noble Shipping Inc. v. Euro-Maritime Chartering Ltd.*, 2003 U.S. Dist.
LEXIS 23008 (S.D.N.Y. 2003) ......................................................................... 8

*Pioneer Trading (Asia Pacific), Ltd. v. Seyang Shipping Company, Ltd.*, 04
CV 5655 ......................................................................................................... 15

*Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963)...........................................................................................14

*Swift & Co. Packers et. al. v. Compania Columbiana Del Caribe, S.A.*, 339 U.S. 684; 70 S. Ct. 861; 94 L. Ed. 1206 (1950);.................................14

*Western Bulk Carrier's (Australia) Pty. v. P.S. International, Ltd.*, 762 F. Supp. 1302 (S.D. Ohio 1991)..........................................................14

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002) ...........................7

*Woodlands, Ltd. v. Westwood Insurance Company, Ltd.*, 865 F. Supp. 13 (D. Md. 1997).............................................................................11

*Ythan Limited v. Americas Bulk Transport Ltd.*, 2004 U.S. Dist. LEXIS 18570 (S.D.N.Y. 2004) ..................................................................8

## STATE CASES

*National Union Fire Insurance Company of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc.*, 269 A.D.2d 101, 703 N.Y.S.2d 3 (1st Dept. 2000)...........................................................................................13

## STATE STATUTES

N. Y. U.C.C. § 4A-209 (2) ...............................................................................8

HEALY & BAILLIE, LLP
Jeremy J. O. Harwood (JH 9812)
Jack A. Greenbaum (JG 0039)
Jana N. Byron (JB 6725)
Attorneys for Defendant
Proteinas Y Oleicos S.A. De C.V.
61 Broadway
New York, NY 10006-2701
(212) 943-3980

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HBC HAMBURG BULK CARRIERS
   GMBH & CO. KG,

                    Plaintiffs,

   -against-

PROTEINAS Y OLEICOS S.A. DE
C.V.,

                   Defendants.

04 CV 6884 (NRB)
***ECF CASE***

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE MARITIME ATTACHMENTS, BAR FURTHER ATTACHMENTS, AND DISMISS THE ACTION

### PRELIMINARY STATEMENT

This is an admiralty action arising under a charter party dated March 8, 2004

between Plaintiff HBC Hamburg Bulk Carriers GMBH & Co. KG ("HBC" or "Plaintiff")

and Defendant Proteinas Y Oleicos S.A. de C.V ("Proteinas" or "Defendant"). The

dispute is subject to arbitration in London. This action was filed on August 25, 2004 to

obtain a maritime attachment pursuant to Rule B of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Defendant filed

a Notice of General Appearance on September 23, 2004.

This Memorandum of Law is submitted in support of Defendant's application,

pursuant to Supplemental Rule E(4)(f) and Local Admiralty and Maritime Rule E.1, for

an Order (1) vacating the Process of Maritime Attachment and Garnishment ("PMAG");

(2) releasing several electronic fund transfers ("EFT") frozen by garnishees Citibank and

Bank of America; (3) directing that no additional EFTs be frozen; (4) barring the issuance

and/or service of any future PMAGs; and (5) dismissing the action for lack of

jurisdiction. As the Advisory Committee Notes to Rule E(4)(f) make clear:

> Rule E(4)(f) is triggered by the defendant or any other person
> with an interest in the property seized. Upon an oral or
> written application similar to that used in seeking a temporary
> restraining order, see Rule 65(b), the court is required to hold
> a hearing as promptly as possible to determine whether to
> allow the arrest or attachment to stand. **The plaintiff has the**
> **burden of showing why the seizure should not be vacated**.
> * * *[1]

Most of the frozen EFTs were originated by third parties for eventual transmission

of U. S. dollars to Defendant's banks in Mexico via intermediary banks in the U.S.A.

There are three grounds for this motion, which do not all apply to all of the EFTs:

(1) EFTs originated by third parties for onward transmission of U. S. Dollars to

Defendant's bank in Mexico were not subject to attachment on a claim against Defendant

because they were not Defendant's property while in the hands of an intermediary bank;

---

[1] Emphasis throughout is added unless otherwise specified.

(2)  the EFTs frozen by Bank of America were not subject to the PMAG issued in the Southern District of New York because they were not located within New York; and

(3)  Defendant's filing of a General Appearance obviated the jurisdictional basis of a Rule B attachment, so that no assets should be attached after such a filing.

### FACTS REGARDING THE FROZEN EFTS

Most of the EFTs in question were transmitted from Defendant's customers' banks in the U. S., or from the customers' foreign banks, to Defendant's foreign banks, via intermediary banks in the U. S.  Those EFTs were initiated in respect of purchase price obligations payable by the customers to Defendant's banks in Mexico in U. S. Dollars. Transferring U. S. Dollars abroad requires the use of an American intermediary bank. Intermediary banks are "correspondents" of either the payor's foreign bank or the payee's foreign bank.  (Bermudez Decl.; Trava Decl.; Moose Decl.)

Defendant's standing payment instructions to its customers require U. S. Dollar payments for products supplied by Defendant's plant in Merida, Yucatan, Mexico to be made to Defendant's bank in Merida, BBVA Bancomer Mexico ("Bancomer"), via Bancomer's correspondent bank in New York, JP Morgan Chase Bank.  (Bermudez Decl. and Ex. A thereto; Trava Decl.)

Defendant's standing payment instructions require U. S. Dollar payments for products supplied by Defendant's plant in Celaya/Bajio, Mexico to be made to Defendant's bank in Bajio, Banco Del Bajio S. A. de C.V. ("Banco Bajio"), via Banco Bajio's correspondent, Bank of America NT & SA in Concord, California.  (Bermudez Decl. and Ex. A thereto; Trava Decl.; Moose Decl.)

## The EFTs Frozen By Citibank

On September 9 and 24 and October 8, 2004, Citibank froze three EFTs: US$36,526.90 originated by Tron Hermanos S. A. de C. V. of Mexico; US$11,968.01 originated by Cognis Corp. of Ohio; and US$342,958.43 originated by Pilgrims Pride S. A. de C. V. of Mexico. (Bermudez Decl.; Greenbaum Decl. Ex. 1)  Inarguably, in each case, Citibank was the payor's bank or a correspondent of the payor's foreign bank, as Citibank was not a designated correspondent of either of Defendant's Mexican banks and Defendant has no account at Citibank. (Bermudez Decl.)  Further, the Cognis and Pilgrims Pride EFTs were frozen after Defendant filed its General Appearance.

## The Cargill EFTs Frozen By Bank of America.

On August 27 and 31, Bank of America froze three EFTs originated by Cargill de Mexico S. A. de C. V. ("Cargill"):    US$229,138.93  destined  for  Bancomer; US$29,104.31 destined for Banco Bajio; and US$33,539.43 destined for Banco Bajio. (Bermudez Decl.; Trava Decl.; Moose Decl.; Greenbaum Decl. Ex. 2)  Bank of America was Cargill's bank in each of those transactions, and Cargill gave its remittance instructions directly to Bank of America in Miami, Florida.  (Trava Decl.; Moose Decl)

The fact that Bank of America was acting as Cargill's bank at the time it froze these EFTs is clearly proven with respect to the EFT of US$229,138.93, in which the correspondent bank of Defendant's Mexican bank, Bancomer, was JP Morgan Chase Bank, not Bank of America.

In the other two Cargill transactions, Cargill instructed its bank, Bank of America in Miami, to remit funds to Bank of America in California for onward transmission to

Defendant's Mexican bank, Banco Bajio. (Trava Decl; Moose Decl.) Defendant has no account in Bank of America (Bermudez Decl.) Bank of America did not credit an account of Banco Bajio. There is no evidence or reason to believe Bank of America acted in a capacity different from that in which it acted when it froze EFTs destined for JP Morgan Chase Bank and thence Bancomer, i. e. Bank of America acted as Cargill's bank, not as Banco Bajio's correspondent.

Further, Bank of America holds the frozen EFTs in a suspense account in Columbia, South Carolina (Greenbaum Decl. Ex. 4)

### Additional EFTs Frozen By Bank of America.

On August 26, 2004, Bank of America froze US$53,682.21 initiated by Malta Texo de Mexico S. A. de C. V. through Citibank for transmission to Banco Bajio via Bank of America in California. (Bermudez Decl.) In this transaction, Bank of America acted as intermediary for Defendant's bank, Banco Bajio. However, the designated routing was not through Bank of America in New York. The PMAG did not reach this EFT outside of New York.

On August 26, 2004, Bank of America froze US$100,000 transferred by Scotiabank Inverlat S.A. for U. S. Dollars purchased by Proteinas for remittance to Banco Bajio via Bank of America in California. (Bermudez Decl.) This is Defendant's property, but the routing instructions did not touch New York. The PMAG did not reach this EFT outside of New York.

On September 15, 2004, Bank of America froze an EFT of US$7,500 originated by Defendant through its Mexican bank, Banco Bajio, via Bank of America in California,

for onward transmission to HSBC for the benefit of Defendant's attorneys, Healy & Baillie, LLP. According to the principles discussed hereafter, this EFT remained Defendant's property. However, the routing instructions did not touch Bank of America in New York. The PMAG did not reach this EFT outside of New York. (Bermudez Decl.; Greenbaum Decl. Ex. 2)

On November 1, 2004, Bank of America froze an EFT of US$8,170 originated by Defendant through Banco Bajio via Bank of America in California for transmission to Bank One in Columbus Ohio, for the benefit of Duraloy Technologies Inc. According to the principles discussed hereafter, this remained Defendant's property while in Bank of America's hands, but the routing instructions did not touch New York. The PMAG did not reach this EFT outside of New York. Additionally, this EFT was frozen after Defendant appeared in this action. (Greenbaum Decl. Ex. 2)

All of these EFTs are held in a suspense account in South Carolina. (Greenbaum Decl. Ex. 3)

## ARGUMENT

### POINT I

**MOST OF THE EFTS WHICH HAVE BEEN FROZEN ARE NOT SUBJECT TO ATTACHMENT BECAUSE THEY WERE NOT PROTEINAS' PROPERTY AT THE TIME THE ATTACHMENTS WERE LEVIED**

The issue of who owns an EFT which is in the hands of an intermediary bank was settled by the Second Circuit's decision in Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002). There, the defendant was the originator of an EFT in payment of an

obligation the defendant/originator owed to a foreign third party ("the beneficiary") in a transaction unrelated to the law suit. The defendant/originator's bank issued a payment order to an intermediary bank. The maritime attachment was levied before the intermediary bank credited the account it held belonging to the beneficiary's foreign bank. The Second Circuit ruled for the first time that an EFT constitutes attachable property, and found that the EFT remained the originator's property because the intermediary bank had not yet transferred it to the beneficiary's bank.

The Second Circuit's opinion is consistent with the uniform statutory definition of when payment is effected by an EFT, i.e., when "title" to the property passes to the beneficiary. EFTs are governed by Article 4A of the Uniform Commercial Code. Section 4A-406 provides:

> **Payment by Originator to Beneficiary; Discharge of Underlying Obligation.**
>
> (1)    Subject to subsection (5) of Section 4A-211 and subsections (4) and (5) of Section 4A-405, the originator of a funds transfer pays the beneficiary of the originator's payment order (i) **at the time a payment order for the benefit of the beneficiary is accepted by the beneficiary's bank in the funds transfer** and (ii)  in an amount equal to the amount of the order accepted by the beneficiary's bank, but not more than the amount of the originator's order.
>
> (2) If payment under subsection (1) is made to satisfy an obligation, the obligation is discharged to the same extent discharge would result from payment to the beneficiary of the same amount in money * * *

A beneficiary's bank "accepts" a payment order either (1) when it pays the beneficiary; or (2) when it receives payment from the sending bank; or (3) on the next

funds transfer date after the payment date in the payment order, if it possesses enough withdrawable funds of the sending bank to cover the amount of the payment order. <u>N. Y. U.C.C.</u> § 4A-209 (2).

In other words, payment has not been made and the originator's property interest has not been transferred if the intermediary bank has not credited an account it holds belonging to the beneficiary's foreign bank or otherwise paid the foreign bank, and has not issued a payment order covered by funds held by the beneficiary's bank. No such payment occurred in respect of any of the frozen EFTs in this case.

The decision in <u>Winter Storm</u> was followed in <u>Ythan Limited v. Americas Bulk Transport Ltd.</u>, 2004 U. S. Dist. LEXIS 18570 (S.D.N.Y. 2004), in which the court rejected a defendant's argument that an EFT it originated was the payee's property when it passed into the hands of an intermediary bank.

One Southern District decision, <u>Noble Shipping Inc. v. Euro-Maritime Chartering Ltd.</u>, 2003 U. S. Dist. LEXIS 23008 (S.D.N.Y. 2003), failed to follow <u>Winter Storm</u>, based on reasoning that, we respectfully submit, was erroneous. In <u>Noble</u>, a third party originated an EFT destined to the foreign defendant for payment of an obligation unrelated to the law suit, which exceeded the amount claimed in the law suit. As the EFT passed through HSBC USA on the way to HSBC Greece, HSBC USA wired HSBC Greece that the excess was credited to HSBC Greece's account for the benefit of the defendant, but the amount designated in the attachment order was frozen. It is submitted that the very distinction between the excess funds that were credited to the beneficiary's foreign bank's account and the frozen funds that were not so credited, highlights the fact

that the latter did not belong to the defendant/beneficiary <u>because</u> they were not credited to the beneficiary's foreign bank.

<u>Noble</u> correctly described an intermediary bank as the holder of an account of a foreign bank. When an intermediary bank receives a payment order, it credits the account it holds belonging to the foreign bank. The intermediary does not hold an account of the beneficiary, owe any debt to the beneficiary, or send any funds to the beneficiary. The foreign bank, on receipt of a credit in its account at the intermediary bank, then owes a debt to the beneficiary. However, the funds in the foreign bank's account at the intermediary belong to the foreign bank, not to the innumerable foreign entities that hold accounts in the foreign bank's offices abroad. Further, the foreign bank is not present in this jurisdiction and is not a garnishee.

The <u>Noble</u> court upheld the attachment on the rationale that the EFT was a debt owed to the defendant/beneficiary. This confuses the "funds" with the debt. The "funds" are still owned by the originator, as held in <u>Winter Storm</u>. The debt is owed to the defendant <u>by the originator</u>, not by the intermediary bank. The originator was not the garnishee. The EFT in the intermediary bank was the property of the originator until it was credited to the foreign bank's account at the intermediary, and then it became the property of the foreign bank, not the beneficiary. It may be that the foreign bank would owe a debt to the defendant/beneficiary when the foreign bank's account was credited, but that debt was situated abroad. The foreign bank was not in the jurisdiction and was not a garnishee.

Clearly, if an individual owes a routine debt to a company which happens to be a

defendant in a law suit, the way to attach the debt as the defendant's property is to serve a PMAG on the individual/debtor.  It would be inadequate to serve a PMAG of the defendant's assets on the individual's bank, and grossly improper for the PMAG to designate and interfere with the innocent individual's personal bank account.  The situation of a foreign bank which has a U. S. dollar account in an American correspondent bank is no different; attachment of the foreign bank's debt to the defendant cannot properly be accomplished by serving a PMAG on the foreign bank's U. S. bank.

The anomalous result of the <u>Noble</u> decision would be to make EFTs the property of two entities at one and the same time and to ignore the statutory regime governing the roles of the respective banks and defining payment by EFT.

It may be that the <u>Noble</u> court considered the EFT was attachable because the intermediary bank holding the funds was that of the <u>defendant/beneficiary</u>'s bank, or, indeed, the same bank (HSBC USA and HSBC Greece).  The point was similarly raised at the status conference in this case that there might be a difference between EFTs in the hands of the originator's foreign bank's correspondent and EFTs in the hands of the beneficiary's foreign bank's correspondent.  We submit there is no such distinction because the beneficiary's foreign bank is not the garnishee in the American forum and cannot be made so by purporting to attach its "personal" bank account here.  But if there is a distinction, it is moot with respect to most of the EFTs in the present case.

In this case, Citibank was clearly the originators' bank or the originators' foreign banks' correspondent bank with respect to the EFTs by Tron Hermanos in the sum of USD36,526.90; Cognis in the sum of USD11,968.01; and Pilgrims Pride in the sum of

USD342,968.43, simply because Citibank was not the designated correspondent of any of Defendant's banks and Defendant has no account there.

Bank of America was inarguably Cargill's bank with respect to Cargill's EFT of USD229,138.93, inasmuch as the transfer was intended for Bancomer, whose correspondent is JP Morgan Chase Bank, not Bank of America. Therefore, it can only be concluded that Bank of America was also acting as Cargill's bank with respect to Cargill's EFTs of USD29,104.31 and USD33,539.43, notwithstanding that Bank of America [in Concorde, California] was also the correspondent of Banco Bajio.

## POINT II

### THE EFTS FROZEN BY BANK OF AMERICA ARE NOT SUBJECT TO THE PMAG BECAUSE THEY ARE NOT WITHIN THIS DISTRICT

It is fundamental that property to be attached pursuant to Rule B must be located within the judicial district in which the PMAG is issued. Det. Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F. 2d 50 (2d Cir. 1965); Limonium Maritime, S. A. v. Mizushima Marinera, S. A., 961 F. Supp. 600, 605-06 (S.D.N.Y. 1997); aff'd. without opinion, 201 F. 3d 431 (2d Cir. 1999); National Shipping & Trading Corp. v. Weeks Stevedoring Company 252 F. Supp. 275 (S.D.N.Y. 1966); Woodlands, Ltd. v. Westwood Insurance Company, Ltd., 865 F. Supp. 13 (D. Md. 1997)

The Second Circuit has made it clear that federal law defers to New York state law to determine whether each branch of a bank is a separate entity and whether service on one branch affects funds held in another branch. Det. Bergenske, 341 F. 2d at 52. In each of the cases cited above, the courts applied New York's "separate entity" rule to hold that

service of an attachment on a branch office of a bank was not effective to seize funds or accounts in another branch of the same bank, especially if the branch was located outside the judicial district which issued the attachment order.

In <u>Digitrex, Inc. v. J. Howard Johnson</u>, 491 F. Supp. 66 (S.D.N.Y. 1980), the District Court opined that the New York state courts would modify the "separate entity" rule in the computer age, because if high speed computers enable a bank to ascertain that a defendant has an account at another branch, there is no reason to apply the rule. <u>Digitrex</u> upheld an attachment served on a bank's <u>main office</u> to restrain funds held in a branch <u>within the same judicial district.</u>

In <u>Limonium Maritime S. A.</u>, 961 F. Supp. at 607, the District Court held that three criteria must be met to satisfy the Digitrex exception:

> The Digitrex exception to the separate entity rule is **only** applicable where: (1) the restraining notice is served on the bank's main office; (2) the bank's main office and branches are within the same jurisdiction; and (3) the bank branches are connected to the main office by high-speed computers and are under the centralized control of the main office.

<u>Limonium Maritime S .A.</u> cited <u>Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.</u>, 921 F. Supp. 1113 at 1119-20 (S.D.N.Y. 1996).

New York's Appellate Division adopted the criteria set out in <u>Limonium Maritime S. A.</u> as New York law, and squarely held: **"the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch."** <u>National Union Fire Insurance Company of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc.</u>, 269 A.

D. 2d 101, 703 N.Y.S. 2d 3 at 4 (1st Dept. 2000)

In <u>Motorola Credit Corp. v. Kemal Uzan</u>, 288 F. Supp. 2d 558 (S.D.N.Y. 2003), the District Court rejected an attempt to execute a judgment against accounts held in foreign branches by service on the banks' offices in New York, writing: ". . . it is not for this Court to limit the separate entity doctrine beyond the limits already set by the courts of New York." <u>Id</u>. at 561.

In the present case, Plaintiff has not met the Digitrex criteria.  Plaintiff did not serve the PMAG on Bank of America's main office, which is in North Carolina, and the EFTs were improperly frozen outside of this jurisdiction.  (Greenbaum Decl. Ex. 4)

In some of the court cases, the argument was (unsuccessfully) made that because a bank account is a debt, the debt can be attached wherever the debtor is located.  That argument, such as it is, is not available here because Citibank and Bank of America owe no debt to Defendant.  Bank of America (in California) holds an account of Banco Bajio, not of Defendant.

## POINT III

### PLAINTIFF SHOULD BE BARRED FROM SERVING FUTURE WRITS OF ATTACHMENT AND FUNDS FROZEN AFTER DEFENDANT FILED A GENERAL APPEARANCE SHOULD BE RELEASED

Formerly known as "foreign attachment," Rule B and its predecessors served the dual purpose of affording jurisdiction over a foreign defendant and providing security for the plaintiff's claim.  <u>Swift & Co. Packers et. al. v. Compania Columbiana Del Caribe, S.A.</u>, 339 U.S. 684; 70 S. Ct. 861; 94 L. Ed. 1206 (1950); <u>Seawind Compania, S. A. v.</u>

Crescent Line, Inc., 320 F.2d 580 (2d Cir. 1963). Security is an "incidental purpose" of

the attachment; security "can only be obtained as an adjunct to jurisdiction." D/S A//S

Flint v. Sabre Shipping Corp., 228 F. Supp. 384, 388 (E.D.N.Y. 1964), aff'd. 341 F. 2d

50 (2d Cir. 1965) "The two purposes may not be separated, however; security cannot be

obtained except as an adjunct to obtaining personal jurisdiction." Seawind at 582.

After a defendant enters a general appearance, thereby consenting to the

jurisdiction of the court, a writ of attachment -- which is intended to secure such an

appearance -- cannot properly issue. Western Bulk Carrier's (Australia) Pty. v. P.S.

International, Ltd., 762 F. Supp. 1302 (S.D. Ohio 1991). Put another way, a plaintiff

cannot be permitted to continue attaching a defendant's assets throughout the course of a

law suit after the defendant has consented to *in personam* jurisdiction.

Defendant's position is squarely supported by the court's decision in Western

Bulk Carrier's (Australia) Pty. v. P.S. International, Ltd., *supra*.  In that case, the

defendant sought an order precluding plaintiff from seeking any further attachments

following the defendant's general appearance. The court granted the defendant's motion,

writing:

> Plaintiff's right to attach any additional funds of defendant in
> the future, as with its right ton the initial attachment of the
> funds then contained in defendant's account ... necessarily
> depends upon a showing that defendant cannot be found
> within the district.  Defendant has now consented to the
> jurisdiction of this court and has waived any challenged it
> may have with respect to personal jurisdiction.  Additionally,
> defendant has authorized [an agent for service of process].
> Accordingly, at this point defendant can be found within this
> district, and therefore there is no basis for future attachments
> of defendant's property.

Similarly, in the case of <u>Maryland Shipbuilding & Dry-dock Co. v. Pacific Ruler Corp.</u>, 201 F. Supp. 858 (S.D.N.Y. 1962), the plaintiff successfully attached a small amount of money which was not sufficient to secure its entire claim. The defendant filed a general appearance and the parties agreed to place the attached funds in escrow. The plaintiff thereafter learned that additional funds would pass through defendant's account in New York. The plaintiff chose to discontinue the action and, on the same day, file a second action requesting another writ of attachment. The court found that the plaintiff discontinued the first action because it <u>knew</u> it would not be able to serve further writs following defendant's general appearance. The court then concluded that because the plaintiff would have been precluded from serving further writs of attachment in the first action due to of the defendant's general appearance, it was precluded from serving further writs in the second action as well.

Recently, in the case of <u>Pioneer Trading (Asia Pacific), Ltd. v. Seyang Shipping Company, Ltd.</u>, 04 CV 5655, S.D.N.Y. 2004, the court addressed the precise issue in question here -- namely whether a defendant's general appearance precludes future maritime attachments. After hearing oral argument from counsel, District Court Judge Deborah A. Batts terminated the impact of the writs of attachment as of the date that he defendants filed a general appearance. *See* <u>Tr.</u> at p.54-55. (Greenbaum Decl. Ex. 5) Other courts have reached the same conclusion: <u>M/V Point Vail</u>, 901 F. 2d 1044, 1052 (11th Cir. 1990) ("[a]fter Point Vail Company entered a general appearance, maritime attachment -- which exists primarily to secure such appearance -- could no longer properly issue."); <u>Diakan Love, S.A. v. Al-Haddad Bros.</u>, 584 F. Supp. 782, 786

(S.D.N.Y. 1984) ("[s]ince Al-Haddad had appeared in the action prior to the time when it drew on the letter at Morgan, I need not consider whether upon that later occurrence the attachment could become effective."); Cocotos S.S. of Panama v. Sociedad Maritime Victoria, 1957 A.M.C. 397, 399 ("[i]n as much as Strathos appeared in the suit on July 23, 1956, the [writ of attachment] dated July n23, 1956 and executed on July 24, 1956 ... is quashed."); Fernandes v. United Fruit Co., 303 F. Supp. 681, 683 (D.C. Md. 1969) ("nothing will defeat an attachment except (1) an actual appearance by the respondent before the marshal levied on property or (2) service of the respondent.").

Three EFTs were frozen after Defendant appeared in this action on September 23. On September 24 and October 8, Citibank froze US$11,968.01 originated by Cognis Corp and US$342,958.43 originated by Pilgrims Pride S. A. de C. V. On November 1, Bank of America froze $8,170 originated by Proteinas for its vendor, Duraloy. Plaintiff relies on Ythan Limited, supra, to argue these EFTs should remain attached as after-acquired property, notwithstanding Defendant's prior general appearance.

It is respectfully submitted that there is no legitimate basis for a distinction between levying a new attachment and freezing after-acquired property pursuant to a previous levy. If the former is contrary to the intent and purpose of Rule B, the latter has precisely the same effect and equally violates the Rule.

## CONCLUSION

**THE ATTACHMENTS SHOULD BE VACATED;**
**THE FUNDS TRANSFERS SHOULD BE RELEASED;**
**FURTHER ATTACHMENTS SHOULD BE BARRED;**
**AND THE ACTION SHOULD BE DISMISSED.**

Dated:   New York, N. Y.
December 27, 2004

Respectfully submitted,

HEALY & BAILLIE, LLP
Attorneys for PROTEINAS Y
OLEICOS S.A. DE C. V.

Of Counsel:

Jeremy J. O. Harwood (JH 9812)
Jana N. Byron (JN 6725)

by _____
Jack A. Greenbaum (JG0039)
61 Broadway
New York, N. Y. 10006
(212) 943-3980

268444.1

17