323-04/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
HBC Hamburg Bulk Carriers GmbH & Co. KG
80 Pine Street
New York, NY 10005
Tel. (212) 425-1900 / Fax (212) 425-1901

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HBC HAMBURG BULK CARRIERS GMBH
& CO. KG,                                                    04 CIV 06884 (NRB)

                              Plaintiff,

          -against-

PROTEINAS Y OLEICOS S.A. DE C.V.,

                              Defendant.
------------------------------------------------------------x

**PLAINTIFF HBC HAMBURG BULK CARRIERS GMBH & CO., KG'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE ATTACHMENTS**

                    FREEHILL HOGAN & MAHAR, LLP
                    Attorneys for Plaintiff
                    HBC Hamburg Bulk Carriers GmbH & Co. KG
                    80 Pine Street
                    New York, NY 10005
                    Telephone (212) 425-1900
                    Facsimile (212) 425-1901

Of Counsel
Michael E. Unger (MU0045)
Lawrence J. Kahn (LK5215)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES     iii

PRELIMINARY STATEMENT     1

STATEMENT OF FACTS     1

DEFENDANT'S ARGUMENTS TO VACATE THE ATTACHMENT
AND/OR RELEASE THE ATTACHED FUNDS
ARE NOT WELL-FOUNDED     4

ARGUMENT     5

POINT I

    THE ATTACHMENTS ARE VALID AND ARE IN
    ACCORDANCE WITH THE SECOND CIRCUIT'S *WINTER
    STORM* DECISION     5

    A.     The attachments were proper under Supplemental Rule B
        wherein "[f]ederal law generally governs questions as to
        the validity of Rule B attachments[.]"     6

        1.     Funds at Bank of America Are Subject to a
                Validly Issued PMAG And Should Remain Frozen     6

        2.     EFT's Are Funds and Are Therefore Property
                Subject to Attachment Under Rule B, and the
                Funds Restrained at Citibank Should Remain
                Frozen     8

POINT II

    THE FILING OF A GENERAL APPEARANCE DOES NOT
    RENDER INEFFECTIVE THE PMAG AND AFTER-
    ACQUIRED PROPERTY IS SUBJECT TO ATTACHMENT UP
    TO THE AMOUNT OF THE SECURITY REQUESTED     12

    A.     The Dual Purpose of Rule B Attachment     12

B.    First Purpose - Obtaining Jurisdiction Over the Defendant.    12

C.    Second Purpose — Security    15

D.    "After-Acquired Property" Is Subject to Rule B Attachment    20

E.    An Order of Attachment Remains Effective Until Modified or Vacated    22

CONCLUSION    23

## TABLE OF AUTHORITIES

**CASES:**

*American Potato Corp. v. Boca Grande S.S. Co.*, 233 F. 542 (E.D. Pa. 1961) — 13

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996) — 12

*Bonito Offshore II., v. Italmare, S.P.A.,* 1983 A.M.C. 538 (E.D.Va. 1982) — 14

*Construction Exporting Enterprises v. Nikki Maritime Ltd.*, 58 F.Supp. 1372 (S.D.N.Y.), a*pp. dism.* 742 F.2d 1432 (2d Cir. 1983) — 14, 15, 16

*Diakan & Love S.A. v. Al Haddad Bros. Enterprises, Inc.*, 584 F.Supp. 782 (S.D.N.Y. 1984) — 18

*Federazione Italiana D.C.A. v. Mandask Compania de Vaporez, S.A.*, 158 F.Supp. 107 (S.D.N.Y 1957) — 13

*Fernandes v. United Fruit Co*., 303 F.Supp. 681 (D. Md. 1969) — 18

*Furness Withy (Chartering) Inc. Panama v. World Energy Sys. Associates Inc.*, 523 F. Supp. 510 (N.D.GA. 1981) — 15

*Insurance Co. of North America v. Canadian American Navigation Co.,* 1933 A.M.C. 1057 (D.C.Z . 1932) — 13

*Kokotas Steamship of Panama S.A. v. Sociedad Maritima Victoria S.A. Panama*, 146 F.Supp. 540 (S.D.N.Y. 1956) — 18

*Manro v. Almeida*, 23 U.S. (10 Wheat.) 473 (1825) — 12

Maryland Shipbuilding & Drydocking Co. v. Pacific Ruler Corp., 201 F. Supp. 858 (S.D.N.Y. 1962) — 17

Maryland Tuna Corp. v. The M/S BENARES, 429 F.2d 307 (2d Cir. 1970) — 11

*Metal Transport Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A.*, 1991 U.S. Dist. LEXIS 2355 (S.D.N.Y. 1991) — 21

*Navieros Inter-Americanos S.A., Inc. v. M/V VASILIA EXPRESS*, 930
    F.Supp. 669 (D. P.R. 1996) ........ 14

*Nehring v. M/V POINT VAIL*, 901 F.2d 1044 (11th Cir. 1990) ........ 17

*Nikko Shipping Co. v. M/V SEAWIND*, 941 F.Supp. 587 (D. Md. 1996) ........ 14

*Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd.*, 2003 U.S. Dist.
    LEXIS 23008 (S.D.N.Y. 2003) ........ 9, 10, 12

*Norfolk Shipbuilding & Drydock Corp. v. M/Y LaBelle Simone*, 371
    F.Supp. 985 (D.P.R. 1973) ........ 15

*Oilmar Co. Ltd. v. Energy Transport Ltd.*, 203 A.M.C. 2366 (D. CT.
    2003) ........ 13

*Pioneer Trading (Asia Pacific) Ltd. v. Seyang Shipping Co., Ltd.*, 04 CV
    5655 (S.D.N.Y. 2004) ........ 19

*Reibor International Ltd. v. Cargo Carriers (KACZ-CO) Ltd.*, 759 F.2d
    262 (2d Cir. 1985) ........ 20, 21

*Seawind Compania S.A. v. Crescent Line Inc.*, 320 F.2d 580 (2d Cir.
    1963) ........ 13

*Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F. Supp. 189
    (S.D.N.Y. 1987) ........ 15

*Swift & Co. Packers*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed.2d 1206 (1950) ........ 12, 22

*United States v. Cia Naviera Continental S.A.*, 178 F.Supp. 561
    (S.D.N.Y. 1959) ........ 13

*United States v. Daccarett*, 6 F.3d 37 (2d Cir. 1993) ........ 9, 10

*VTT Vulcan Petroleum v. Langham-Hill Petroleum Inc.*, 684 F.Supp. 389
    (S.D.N.Y. 1988) ........ 13

*West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v.
    McAllister Bros., Inc.*, 829 F. Supp. 125 (E.D.PA. 1993) ........ 6

*Western Bulk Carriers (Australia) Pty., Ltd. v. P. S. International, Ltd.*,
    762 F.Supp. 1302 (S.D. Ohio 1991)                      16

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002)     5, 7, 8, 9, 10, 11, 12, 21

*Ythan Ltd. v. Americas Bulk Transport Ltd.*, 336 F. Supp. 2d 305
    (S.D.N.Y. 2004)                                 20

## STATUTES AND TREATISES:

*Moore's Federal Practice*, 7A, ¶B. 06 n.28 (2d ed.) in B. 08 at B-
    351 n.2                                 16

N.Y. U.C.C. Article 4A                           8, 9

Rule B of the Supplemental Rules for Certain Admiralty and
    Maritime Claims of the Federal Rules of Civil Procedure     1, 6, 13

Robert M. Jarvis, "An Introduction to Maritime Attachment
    Practice Under Rule B", 20 J. Mar. L. & Comm. 521, 530
    (Oct. 1989)                               11

## PRELIMINARY STATEMENT

Plaintiff, HBC HAMBURG BULK CARRIERS GMBH & CO., KG (hereinafter "HBC" or "Plaintiff"), by and through its undersigned attorneys, Freehill, Hogan & Mahar, LLP, respectfully submits this Memorandum of Law in opposition to Defendant's motion to vacate the attachment issued in this matter pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B").

## STATEMENT OF FACTS

This action stems from HBC's claim that Defendant PROTEINAS Y OLEICOS S.A. DE C.V. (hereinafter "PROTEINAS" or "Defendant") (a) failed to pay demurrage owed to HBC with respect to three voyages involving the M/V SEALAVENDER, M/V IRINI F and M/V ZENOVI pursuant to a charter party dated March 8, 2004; and (b) failed to declare two additional voyages as required by Addendum 3 to the charter party. (Verified Complaint, ¶4-14.)  Under the terms of the charter party, the dispute between the parties is subject to arbitration in the City of London, England.  (Verified Complaint, ¶16.)  Both parties have appointed arbitrators and the arbitration is proceeding.

HBC's action herein is ancillary to the London arbitration proceeding and has been filed, primarily, for the purpose of securing its claims in the London arbitral proceeding.  Prior to initiating the action in this Court, HBC offered PROTEINAS an opportunity to pay amounts admitted by PROTEINAS to be outstanding and to post security for the difference claimed by HBC in the arbitration.  PROTEINAS failed or refused to pay the amounts it admitted were owed and failed or refused to post security.

HBC filed a Verified Complaint on August 25, 2004 which contained a request for the issuance of an attachment order  pursuant to Rule B.  Pursuant to such request, Plaintiff supplied the Court with an affidavit attesting to the steps taken by Plaintiff to search for the presence of Defendant PROTEINAS within the District and that based on such search, Defendant PROTEINAS could not be found within the District.  That same day the Court issued an *ex parte* Order of Maritime Attachment of PROTEINAS' property within the District.  (A copy of the *ex parte* Order dated August 25, 2004 is annexed as Ex. 1 to the Affidavit of Michael E. Unger.)  Pursuant to Rule B and the Court's August 25, 2004 Order, the Clerk issued Process of Maritime Attachment and Garnishment ("PMAG") on August 25, 2004 which authorized attachment of PROTEINAS' property within the District, including any property held by any garnishee on whom a copy of the Order of Attachment was served, up to and including the amount of $1,590,408.11.  (A copy of the PMAG dated August 25, 2004 is attached to the Unger Aff. as Ex. 2.)

HBC served the PMAG on Bank of America on August 26, 2004 and thereafter. Between August 26, 2004 and September 15, 2004, Bank of America identified six electronic funds transfers ("EFT's") as subject to the PMAG and withheld funds totaling approximately $452,964.88.

HBC served the PMAG on Citibank on September 21, 2004 and thereafter.  On September 21, 2004, Citibank identified an EFT as subject to the PMAG and withheld funds totaling approximately $36,526.00.

On September 23, 2004 Healy & Baillie filed a Notice of Appearance on behalf of Defendant PROTEINAS, and served a copy of the same on undersigned counsel.

Thereafter, on September 24 and October 8, 2004, Citibank identified two more EFT's, totaling approximately $354,936.43, as subject to the PMAG and withheld those funds. Bank of America, on November 1, 2004, identified an EFT in the approximate amount of $8,170.00 as subject to the PMAG and withheld those funds.

On November 9, 2004, Defendant filed its Answer to the Verified Complaint. On January 4, 2005, Citibank identified two more EFT's as subject to the PMAG, in the total amount of approximately $834,965.79 and withheld those funds. Inasmuch as Plaintiff recognized that the total restrained had exceeded the amount permitted by the Court's Order of August 25, 2004 and the Process issued pursuant to that Order, on January 4, Plaintiff instructed Citibank to release the oversecured amount (approximately $97,000), and advised both Citibank and Bank of America that it was fully secured and that no further funds were to be restrained.

From the time that funds were first seized by Bank of America in August 2004, HBC repeatedly offered PROTEINAS the opportunity to pay the amounts it admitted were owed and to post security for the difference. At each juncture, PROTEINAS refused or failed to pay the amounts it admitted were owed and refused or failed to post alternative security.

Only after receiving defendant's motion did it come to our attention that the Electronic Funds Transfers (EFT's) held by Bank of America are not held within the Southern District of New York. These funds, in the amount of $462,292.26, are currently being held in an interest bearing suspense account located in Columbia, South Carolina.

Whereas Proteinas has argued that the Bank of America funds are not subject to the New York Process Of Maritime Attachment And Garnishment because they are not within this district, HBC has filed an attachment action in the U.S. District Court for the District of South Carolina. While defendant has the opportunity to challenge that attachment, HBC does not believe there is a valid basis for doing so.

To aid the Court, a table showing the chronology of events is found below.

| Date | Event | Party | Funds Seized | Running Total |
|------|-------|-------|--------------|---------------|
| 8/26/04 | Verified Complaint | Plaintiff | | $          0 |
| 8/26/04 | Funds Seized | Bank of America | $100,000.00 | $    100,000.00 |
| 8/26/04 | Funds Seized | Bank of America | $  53,682.21 | $    153,682.21 |
| 8/30/04 | Funds Seized | Bank of America | $  29,104.31 | $    182,786.52 |
| 8/30/04 | Funds Seized | Bank of America | $229,138.93 | $    411,925.45 |
| 9/1/04 | Funds Seized | Bank of America | $  33,539.43 | $    445,464.88 |
| 9/15/04 | Funds Seized | Bank of America | $    7,500.00 | $    452,964.88 |
| 9/21/04 | Funds Seized | Citibank | $  36,526.00 | $    489,490.88 |
| 9/23/04 | General Appearance | Defendant | | $    489,490.88 |
| 9/24/04 | Funds Seized | Citibank | $  11,968.00 | $    501,458.88 |
| 10/8/04 | Funds Seized | Citibank | $342,968.43 | $    844,427.31 |
| 11/1/04 | Funds Seized | Bank of America | $    8,170.00 | $    852,597.31 |
| 11/9/04 | Answer | Defendant | | $    852,597.31 |
| 1/4/05 | Funds Seized | Citibank | $333,414.53 | $1,186,011.84 |
| 1/4/05 | Funds Seized | Citibank | $501,551.26 | $1,687,563.10 |
| 1/4/05 | Funds Released | Plaintiff/Citibank | $  97,154.99 | $1,590,408.11 |

Also to aid the Court, the following table provides a total seized per bank.

| Bank | Total Seized | Seized Before 9/23 | Seized Between 9/23-11/9 | Seized Post 11/9 |
|------|--------------|--------------------|-----------------------|-------------------|
| Bank of America | $   461,134.88 | $452,964.88 | $   8,170.00 | 0 |
| Citibank | $1,129,273.23 | $  36,526.00 | $354,936.43 | $737,810.80 |

## DEFENDANT'S ARGUMENTS TO VACATE THE ATTACHMENT AND/OR RELEASE THE ATTACHED FUNDS ARE NOT WELL-FOUNDED

In seeking to have the attachments of the funds held at Citibank and Bank of America vacated, PROTEINAS makes three arguments. First, PROTEINAS asserts that

the EFT's seized at Bank of America are not subject to attachment because they were not within the Southern District of New York. Secondly, PROTEINAS asserts that most of the EFT's which have been frozen should not be subject to attachment because they were not PROTEINAS' property at the time they were frozen by the Garnishees. Thirdly, PROTEINAS asserts that its filing of a general appearance and/or subsequent answer has the effect of precluding the seizure of additional funds pursuant to the PMAG. As set forth below, none of Defendant's contentions have merit. Accordingly, the motion to vacate the attachments should be denied.

## ARGUMENT

### POINT I

### THE ATTACHMENTS ARE VALID AND ARE IN ACCORDANCE WITH THE SECOND CIRCUIT'S *WINTER STORM* DECISION

It is undisputed that the Plaintiff's Verified Complaint herein sets forth a cause of action cognizable in admiralty for the breach of a maritime contract of charter party. It is also undisputed that at the time of the filing of the Verified Complaint, Defendant PROTEINAS could not be "found" within the Southern District of New York for the purposes of Rule B. Accordingly, maritime attachment pursuant to Rule B was a form of relief available to HBC in this matter, and the Court's Order of August 25, 2004 directing the attachment of Defendant's property within the District was proper. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

The fact that the underlying dispute is subject to foreign arbitration does not interfere with the availability of Rule B attachment. *Winter Storm*, 310 F.3d at 266. See

also, *West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v. McAllister Bros., Inc.*, 829 F. Supp. 125, 127 (E.D.PA. 1993).

There is simply no question that the grounds for obtaining the Order and PMAG were present and satisfied as of the time of the filing of the Verified Complaint on August 25, 2004. Recognizing the same, PROTEINAS now argues that, for various reasons, the attachment was ineffective and that the funds should be released. PROTEINAS' bases for finding the attachment ineffective are without merit.

A.    **The attachments were proper under Supplemental Rule B wherein "[f]ederal law generally governs questions as to the validity of Rule B attachments[.]"**

Rule B provides in relevant part:

> In an *in personam* action…[i]f a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.

Fed.R.Civ.P. Adm., Supp. B(1)(a).

1.    **Funds at Bank of America Are Subject to a Validly Issued PMAG And Should Remain Frozen**

PROTEINAS argues that none of the funds frozen by Bank of America were ever "in" the Southern District of New York and hence were never subject to the Court's Order and that they should therefore now be released. In support of this argument, PROTEINAS has supplied the affidavits of several individuals, who attested to using Bank of America with regard to payments to or from PROTEINAS through Bank of America branches in California or Florida, but not in New York. PROTEINAS argues that since Bank of America branches outside New York were utilized, the funds never entered New York and were consequently not subject to the Court's Order.

Only on receiving PROTEINAS' motion papers did HBC learn for the first time that PROTEINAS was claiming (though PROTEINAS has yet to supply any proof of the *actual* routing of the funds from Bank of America itself) that the funds were never routed through New York and hence were never subject to the Court's Order. Inasmuch as the funds are now indisputably located in South Carolina, HBC has initiated a companion action in South Carolina and has served the Bank of America branch in South Carolina where the funds are held with a Rule B PMAG issued by the District Court for South Carolina. This was achieved on January 7, 2005, and a copy of the PMAG issued by the United States District Court for the District of South Carolina and the affidavit of service on Bank of America are attached to the Unger Affidavit as Ex.'s 3 and 4, respectively.

Accordingly, whether the funds held by Bank of America are held by either the Southern District of New York PMAG or the District of South Carolina PMAG is irrelevant, as the funds are certainly held by either one PMAG or the other.[1] Accordingly, Defendant's basis for seeking the release of the funds held at Bank of America – that the funds were not in New York at the time of the service of the Southern District of New York PMAG on Bank of America, whether valid or not, is moot and simply need not be determined by the Court. HBC respectfully suggests the portion of Defendant's motion which seeks to vacate the attachment of the funds held at Bank of America on the ground that they were not in New York be stayed pending any challenge PROTEINAS may bring to the South Carolina attachment.

---

[1] As the *Winter Storm* Court held, once a plaintiff has served a PMAG on a garnishee holding funds of the defendant named in the PMAG, the question of whether the garnishee was properly in possession of the defendant's funds at the time of service is irrelevant to the question of whether the funds have actually been attached. If the garnishee is actually in possession of the defendant's funds at the time of service of a properly issued PMAG, whether the garnishee should have been in possession of the funds or not, the attachment successfully attaches those funds. 310 F.3d at 274-275 n. 7.

2.   **EFT's Are Funds and Are Therefore Property Subject to Attachment Under Rule B, and the Funds Restrained at Citibank Should Remain Frozen**

In its supporting memorandum, PROTEINAS argues that all of the funds restrained at Citibank should be released as not subject to the attachment because the EFT's that were the basis of those funds were not the property of PROTEINAS.  In support of this position, PROTEINAS misapplies the Second Circuit's decision in *Winter Storm*.  PROTEINAS claims that *Winter Storm* stands for the proposition that an EFT remains the property of the originator while in the possession of the intermediary bank. Stated otherwise, PROTEINAS contends that an EFT does not become its "property" until received by its bank in Mexico.  This is a gross overstatement of the holding in *Winter Storm* and runs contrary to both common sense and basic accounting principles. Indeed, the Court in *Winter Storm* held that "EFT funds in the hands of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a)."  310 F.3d at 278.

PROTEINAS also contends that since it was merely named as the beneficiary of the funds transfer, the attachment was a nullity and of no effect with regard to garnishing any property of PROTEINAS based upon the validity of attachments under federal law as governed by state law, here, N.Y. U.C.C. Article 4A.  The *Winter Storm* decision, however, not only determined that EFT's were attachable property under Rule B, but also holds that N.Y. U.C.C. Article 4A is preempted to the extent it conflicts with or prejudices the right of maritime attachment under Rule B.  The Second Circuit instead held:

> [i]t follows that the broad, inclusive language of Admiralty Rule B(1)(a) and the EFT analysis in *Daccarett* combine to fashion a rule in this Circuit that EFT funds in the hands of an intermediary bank may be attached pursuant to

> Admiralty Rule B(1)(a). Because that rule is derived from
> federal law, there is no occasion to look for guidance in
> state law.

*Winter Storm*, 310 F.3d at 278, *citing United States v. Daccarett*, 6 F.3d 37 (2d Cir.

1993); *see also Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd.*, 2003 U.S. Dist.

LEXIS 23008 at *10 (S.D.N.Y. 2003) ("[defendant] contends that Article 4A of the N.Y

U.C.C. provides useful guidance on the issue of what party holds title to funds transferred

by an EFT…. To the extent N.Y. U.C.C. Art. 4A conflicts with Rule B, it is preempted").

HBC submits that PROTEINAS is attempting to confuse the issue of the

"attachability" of EFT's in claiming that the funds are "owned" by the bank (which of

course is not true), and by suggesting that attachability of an EFT depends upon the

relationship, if any, between the garnishee bank and the defendant.  All of this

obfuscation is designed to divert the Court's attention from the real reason an EFT is

attachable in the first place; namely that the EFT represents funds being transferred either

to the defendant or from the defendant in payment of a debt.

In *Winter Storm*, the funds that were intercepted represented a payment by the

defendant to a non-party.[2]  The funds were intercepted after they had left the defendant's

bank and while they were in the hands of the defendant's intermediary bank (Bank of

New York), and before being transferred to the non-party's intermediary bank.  The

*Winter Storm* Court did not limit its holding on the applicability of Rule B to EFT's as

only applying to EFT's emanating from the defendant.  The *Winter Storm* Court's

analysis was far broader – "an EFT, while it takes the form of a bank credit at an

---

[2] Under Rule B, the property attached need not have a direct connection to the claim sued upon. *Winter Storm*, 310 F.3d at 268.

intermediary bank, is clearly a seizable *res*".  *Winter Storm*, 310 F.3d at 276, *citing Daccarett*, 6 F.3d at 55.

Indeed, in *Noble Shipping,* an EFT emanating from a non-party to the defendant was frozen pursuant to Rule B while in the hands of the defendant's intermediary bank in New York.  Judge Cote, relying on *Winter Storm* and *Daccarett*, found that EFT's in the hands of intermediary banks are seizable assets under Rule B.  *Noble Shipping*, 2003 U.S. Dist. LEXIS 23008 at *9.  This is so because EFT's are funds representing the payment of a debt, and since the defendant has an interest in the funds, they are attachable property of the defendant.  *Noble Shipping*, 2003 U.S. Dist. LEXIS 23008 at *7-*10.

Common sense and accounting principles require the same result.  Rule B permits the attachment of "the defendant's tangible or intangible personal property".  Property indisputably includes money, and the EFT's at issue in this matter undeniably represent money.  With regard to the funds at Citibank, PROTEINAS claims that all the funds restrained at that institution are funds emanating from its customers and represent payments by its customers through their own intermediary banks.  As such, PROTEINAS claims that since the funds had not reached either PROTEINAS' intermediary bank or PROTEINAS' bank in Mexico, the funds were not yet the property of PROTEINAS.[3] PROTEINAS further asserts that the funds in the foreign bank's account at the intermediary bank belong to the foreign bank.  This stands common sense on its head.

---

[3] If this were true, the parties that submitted affidavits in support of PROTEINAS' position in this matter would presumably have intervened and demanded a return of their funds.  It is curious in the extreme that none of the affidavits from the PROTEINAS customers assert that the funds belong to them. That they did not, clearly evidenced that the funds were considered by them to be the property of PROTEINAS. Indeed, if the funds at Citibank were to be released and if their original payment instructions were to be followed, they would ultimately be credited to PROTEINAS. The EFT's captured at Citibank are certainly property in which PROTEINAS has an interest that are seizable pursuant to Rule B.  *Maryland Tuna Corp. v. The M/S BENARES*, 429 F.2d 307 (2d Cir. 1970).

In each case, the funds were paid pursuant to a contract in which PROTEINAS was required to supply a product and PROTEINAS' customer was required to pay for that product. The debt owed to PROTEINAS by its customer is undoubtedly carried on Defendant's books as an account receivable which represents an asset (a form of property) of PROTEINAS.[4]  The debt owed by the customer to PROTEINAS under these contracts was clearly property subject to attachment under Rule B, and the EFT's are funds representing payment of that debt.  *Noble Shipping*, 2003 U.S. Dist. LEXIS 23008 at *9 ("neither the location of the debt at the time of its attachment nor the fact that this case arises under maritime law, changes the basic principle that debts are property subject to attachment"); *Winter Storm*, 310 F.3d at 276 ("Rule B permits a plaintiff to attach intangible items, such as debts owed to the defendant.  Such items may be attached even if they have not yet matured or have only partially matured"), *citing* Robert M. Jarvis, "An Introduction to Maritime Attachment Practice Under Rule B", 20 J. Mar. L. & Comm. 521, 530 (Oct. 1989).  Here, Plaintiff HBC attached funds at Citibank in New York, which represented payment of a debt owed to Defendant PROTEINAS.  Such funds are attachable property of PROTEINAS and the funds restrained at Citibank should not be released and the application to vacate the attachment should be denied.

---

[4] To the extent PROTEINAS contends the debt and / or the funds were not an asset or account receivable, HBC requests the opportunity to conduct discovery.

In each case, the funds were paid pursuant to a contract in which PROTEINAS was required to supply a product and PROTEINAS' customer was required to pay for that product. The debt owed to PROTEINAS by its customer is undoubtedly carried on Defendant's books as an account receivable which represents an asset (a form of property) of PROTEINAS.[4] The debt owed by the customer to PROTEINAS under these contracts was clearly property subject to attachment under Rule B, and the EFT's are funds representing payment of that debt. *Noble Shipping*, 2003 U.S. Dist. LEXIS 23008 at *9 ("neither the location of the debt at the time of its attachment nor the fact that this case arises under maritime law, changes the basic principle that debts are property subject to attachment"); *Winter Storm*, 310 F.3d at 276 ("Rule B permits a plaintiff to attach intangible items, such as debts owed to the defendant. Such items may be attached even if they have not yet matured or have only partially matured"), *citing* Robert M. Jarvis, "An Introduction to Maritime Attachment Practice Under Rule B", 20 J. Mar. L. & Comm. 521, 530 (Oct. 1989). Here, Plaintiff HBC attached funds at Citibank in New York, which represented payment of a debt owed to Defendant PROTEINAS. Such funds are attachable property of PROTEINAS and the funds restrained at Citibank should not be released and the application to vacate the attachment should be denied.

---

[4] To the extent PROTEINAS contends the debt and / or the funds were not an asset or account receivable, HBC requests the opportunity to conduct discovery.

## POINT II

### THE FILING OF A GENERAL APPEARANCE DOES NOT RENDER INEFFECTIVE THE PMAG AND AFTER-ACQUIRED PROPERTY IS SUBJECT TO ATTACHMENT UP TO THE AMOUNT OF THE SECURITY REQUESTED

That Proteinas filed a general appearance on September 24, 2004, does not serve to defeat HBC's attachment of funds levied prior to the filing.  Nor does the filing of the general appearance serve to cut off the ability of the PMAG to reach additional funds coming into possession of a garnishee which held funds belonging to the defendant when served with the PMAG prior to the filing of the general appearance.  Once the PMAG effectively attaches any funds in the hands of the garnishee, it remains effective to attach so called "after-acquired property" up to the sum permitted by the PMAG so as to permit the plaintiff to obtain full security for its claim.

### A.    The Dual Purpose of Rule B Attachment

PROTEINAS acknowledges that an attachment under Rule B serves the dual purpose of (1) obtaining jurisdiction over the defendant *in personam* through attachment of his property within the district; and (2) to assure satisfaction in case the suit is successful.  *Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 489 (1825); *Swift & Co. Packers v. Compania Columbia*, 339 U.S. 684, 693 (1950); *Winter Storm*, 310 F.3d at 268, *citing Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996).

### B.    First Purpose - Obtaining Jurisdiction Over the Defendant.

Rule B provides in relevant part:

> In an *in personam* action...[i]f a defendant is not found within the district,
> a verified complaint may contain a prayer for process to attach the
> defendant's tangible or intangible personal property – up to the amount
> sued for – in the hands of garnishees named in the process.

Fed.R.Civ.P. Adm., Supp. B(1)(a).

To determine whether the defendant is "found", "a two-pronged inquiry [is made]: first, whether [defendant] can be found within the district in terms of [*in personam*] jurisdiction, and second, if so, whether it can be found for service of process." *United States v. Cia Naviera Continental S.A.*, 178 F.Supp. 561, 563 (S.D.N.Y. 1959). If either inquiry produces a negative answer, attachment is permitted. *Id.*

Simply filing a general appearance and designating an agent to receive service of process within the district does not equate to being "found". "If [Rule B] attachment in admiralty is permitted only as a means of enabling the libelant's suit to proceed, it might be supposed that the known presence of an agent authorized to accept process would suffice to preclude such an attachment under Rule [B]. The cases, however, suggest an additional requirement, namely that the respondent be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Seawind Compania S.A. v. Crescent Line Inc.*, 320 F.2d 580, 583 (2d Cir. 1963), citing *American Potato Corp. v. Boca Grande S.S. Co.*, 233 F. 542, 543 (E.D. Pa. 1961); *Insurance Co. of North America v. Canadian American Navigation Co.*, 1933 A.M.C. 1057 (D.C.Z. 1932); *Federazione Italiana D.C.A. v. Mandask Compania de Vaporez, S.A.*, 158 F.Supp. 107, 111 (S.D.N.Y 1957). See also, *VTT Vulcan Petroleum v. Langham-Hill Petroleum Inc.*, 684 F.Supp. 389, 391 (S.D.N.Y. 1988) (Judge Leisure); *Oilmar Co. Ltd. v. Energy Transport Ltd.*, 203 A.M.C. 2366 (D. Conn. 2003).

In *Nikko Shipping Co. v. M/V SEAWIND*, 941 F.Supp. 587 (D. Maryland 1996), counsel for defendant vessel owner designated an agent and filed a general appearance before plaintiff could serve process attaching or arresting the vessel thereby attempting to make itself subject to personal jurisdiction and available for service of process. Citing Judge Brieant's opinion in *Construction Exporting Enterprises v. Nikki Maritime Ltd.,* 58 F.Supp. 1372 (S.D.N.Y. 1983), *app. dism*. 742 F.2d 1432 (2d Cir. 1983), the *Nikko* court held that the shipowner's filing of the appearance and appointment alone, absent significant contacts with the District of Maryland, was not sufficient to defeat the attachment. See also, *Navieros Inter-Americanos S.A., Inc. v. M/V VASILIA EXPRESS*, 930 F.Supp. 669 (D. P.R. 1996) (permitting vessel owner's attachment despite the appointment of an agent to receive service of process and filing of general appearance before the attachment was served); *Bonito Offshore II v. Italmare, S.P.A.*, 1983 A.M.C. 538 (E.D.Va. 1982) (where defendant entered general appearance before PMAG was served, an evidentiary hearing was required to determine whether defendant does sufficient business in the district to subject it to the court's *in personam* jurisdiction).

In this case, PROTEINAS was capable of being served within the district only as of September 23, 2004 when Healy & Baillie was authorized "to accept service *of the complaint dated August 25, 2004* as agents for service." (See telefax from Healy & Baillie dated September 23, 2004 attached to Unger Declaration as Ex. 5, emphasis supplied.) Despite having satisfied the service prong, the filing of a general appearance and later of an answer does not render the defendant "found" for purposes of Rule B. PROTEINAS has not asserted that it has engaged in sufficient activity within New York so as to satisfy due process and permit a finding that it is subject to the *in personam*

jurisdiction of New York courts generally. It is doubtful that a defendant's interactions with its attorneys that result in the filing of an answer suffice to establish "minimum contacts" with the District, because the defendant's filing of an answer in one case will not result in that defendant's being subject to personal service within the District with regard to unrelated matters. Thus, PROTEINAS is not, as yet, "found" within the district for purposes of Rule B.

C.    **Second Purpose — Security**

Courts have recognized that the spirit of Rule B is not violated "when a party's primary interest in seeking the attachment is obtaining security to satisfy a judgment, rather than simply obtaining *in personam* jurisdiction" *Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F. Supp. 189, 191 (S.D.N.Y. 1987); *Furness Withy (Chartering) Inc. Panama v. World Energy Sys. Associates Inc.*, 523 F. Supp. 510 (N.D.GA. 1981); *Norfolk Shipbuilding & Drydock Corp. v. M/Y LaBelle Simone*, 371 F.Supp. 985 (D.P.R. 1973). If the second purpose of the Rule is to be of effect, a PMAG which validly attaches defendant's property must have continuing effect beyond the filing of the defendant's appearance until the point at which the plaintiff's claim is fully secured. If obtaining security for its claims is the permissible primary goal of the plaintiff, it makes little sense that the filing of a general appearance and designation of an agent for service of process should serve to cut-off plaintiff's ability to obtain the security.

This argument is illustrated by *Construction Exporting Enterprises v. Nikki Maritime Ltd.,* 58 F.Supp. 1372, 1375 (S.D.N.Y. 1983), *app. dism.* 742 F.2d 1432 (2d Cir. 1983). There, the plaintiff initially moved for an attachment under New York state law, which was denied. After subsequently learning that an attachment under admiralty

supplemental Rule B could have been filed initially, plaintiff was permitted to amend the complaint and thereafter moved for process of attachment as against property belonging to the defendant company long after the defendant had appeared.  Citing *Moore's Federal Practice*, 7A, ¶B. 06 n.28 (2d ed.) and B. 08 at B-351 n.2, Judge Brieant recognized both purposes of the attachment stating "the right to the attachment is not defeated by the filing of a general appearance.  But for the security of an attachment, because there is no real presence here, the appearance will be of no assistance to plaintiff in enforcing its rights, and is not equivalent to being found within the district." *Id.* at 1375.

The cases cited by PROTEINAS are inapposite and fall into two categories: 1) those where no funds or property belonging to the defendant were attached prior to the defendant's appearance; and 2) those where defendant appeared after funds were attached but the court did not consider whether the dual purpose of Rule B had been satisfied. None of the cases consider whether the security purpose must be satisfied once an appearance has been made.

PROTEINAS relies extensively upon the Ohio District Court case of *Western Bulk Carriers (Australia) Pty. v. P.S. International, Ltd.*, 762 F.Supp. 1302 (S.D. Ohio 1991).    In *Western Bulk*, the plaintiff attached assets belonging to defendant.  Post-attachment, the defendant filed a general appearance in which it submitted to the *in personal* jurisdiction of the court and designated an agent for receipt of service of process.    The defendant moved for an order preventing any further attachments. PROTEINAS chooses to gloss over the fact that the plaintiff in *Western Bulk* offered no opposition to the defendant's alternative argument that the appearance resulted in its being found in the district.    That court also failed to consider whether the security

purpose required a finding that the PMAG should remain effective as against "after-acquired property."

Nor does *Maryland Shipbuilding & Drydocking Co. v. Pacific Ruler Corp.*, 201 F. Supp. 858 (S.D.N.Y. 1962) provide support for PROTEINAS' position. *Maryland Shipbuilding* is readily distinguishable based upon its unique set of facts. There, certain funds (less than the amount claimed) were attached in the hands of defendant's bank in New York. The parties subsequently agreed in writing that the courts in Amsterdam would have sole jurisdiction over the dispute and defendant posted security in the full amount to satisfy any judgment which might be rendered against it. Later the same day, after informing defendant that it intended to pursue the claim in the Netherlands, and after filing a discontinuance of the first action, Maryland Shipbuilding filed a second action in New York in all material respects identical with the discontinued action. The court found the actions of Maryland Shipbuilding in concealing its motive for the discontinuance of the first action and attempting by circumvention to increase the amount of its attachment and obtain double security constituted an improper practice and displayed a "manifest want of equity" justifying vacating the attachment pursuant to former Admiralty Rule 21.

*Nehring v. M/V POINT VAIL*, 901 F.2d 1044 (11th Cir. 1990) is also readily distinguishable as no valid attachment was effected in that case. Certain crewmembers arrested a vessel owned by their employer after being told their wages would not be paid. The Trust Funds of the seamen's union filed an intervening complaint asserting claims *in rem* against the vessel and *in personam* against the defendant company to collect contributions which the defendant company had agreed to make to the funds. The vessel

was released after a bond was posted by the company to secure payment of certain claims for which judgment may been entered against the vessel *in rem* and/or the defendant employer *in personam* on claims of maritime attachment and garnishment. The employer thereafter entered a general appearance not contesting the court's *in personam* jurisdiction and answered the intervening complaint. The district court entered judgment in favor of the Funds for unpaid employer contributions and ordered the trust funds could satisfy their judgment out of the release bond. On appeal, the Eleventh Circuit reversed, holding that because neither the verified intervening complaint nor any affidavit submitted by the funds satisfied the Rule B requirement that the party seeking attachment attest that the defendant cannot be found within the district, there was never a valid attachment by the fund.

*Diakan & Love S.A. v. Al Haddad Bros. Enterprises, Inc.*, 584 F.Supp. 782 (S.D.N.Y. 1984) is also miscited by defendant. In that case Judge Leval found the service of a PMAG upon an advising bank in a letter of credit situation did not attach property of the defendant. Judge Leval did not consider whether the appearance of the defendant after attachment of the letter of credit would have been effective to foreclose attachment of additional funds flowing into the account.

*Kokotas Steamship of Panama S.A. v. Sociedad Maritima Victoria S.A. Panama*, 146 F.Supp. 540 (S.D.N.Y. 1956) involved the filing of a general appearance prior to service of the PMAG. Similarly, in *Fernandes v. United Fruit Co.*, 303 F.Supp. 681 (D. Md. 1969), plaintiff seaman sought to attach his employer's vessel after the employer had answered. Neither case discusses whether both prongs of the "found" test were satisfied or the import of the security purpose.

The issue before Judge Batts in *Pioneer Trading (Asia Pacific) Ltd. v. Seyang Shipping Co., Ltd.*, 04 CV 5655 (S.D.N.Y. 2004), was <u>not</u> the continuing effect of a PMAG upon assets which come into the hands of the garnishee after a successful attachment and after the defendant's filing of a general appearance. In *Pioneer Trading* plaintiff failed to attach assets at any of 17 banks upon which a PMAG had been served. After filing a general appearance and answer consenting to *in personam* jurisdiction, Seyang moved to vacate the order permitting the attachment of its assets arguing that because Seyang had filed a general appearance and submitted to the personal jurisdiction of the court it was "found" within the district. Interestingly, Seyang was represented by PROTEINAS' counsel, Mr. Greenbaum and his partner Mr. Lambert of the Healy & Baillie firm.

In opposing the motion Seyang took the position that the filing of a general appearance does not defeat the continued service of additional copies of the process of maritime attachment and garnishment. If the filing of the appearance does not prohibit the service of the PMAG on the same garnishees or additional garnishees which did not hold any of defendant's funds prior to the appearance, it follows that the appearance does not render moot the continuing effectiveness of a PMAG as to a additional assets coming into the possession of a garnishee previously holding defendant's property pursuant to a valid and effective PMAG. Judge Batts was not required to, and did not, determine whether the filing of an appearance, without evidence the defendant was otherwise subject to the court's *in personam* jurisdiction, was sufficient to defeat the service of additional copies of the PMAG as this argument was not made by Seyang. Nor did Seyang argue that the security purpose of the attachment had not been satisfied.

Although defendant has appointed an agent and has filed an appearance, without proof that defendant is subject to the general jurisdiction of the New York courts, it is not "found" for the purposes of Rule B.   Moreover, defendant's appearance should not be permitted to interfere with plaintiff's right to obtain full security for its claim.   Once a Rule B attachment has been issued and assets of the defendant have successfully been attached by the plaintiff, the defendant's subsequent appearance does not serve to sever the continuing effect of the Order of attachment, "including its post-levy effects". *Ythan, Ltd. v. Americas Bulk Transport Ltd.*, 366 F.Supp.2d 305, 308 (S.D.N.Y. 2004).

**D.     "After-Acquired Property" Is Subject to Rule B Attachment**

The decision of the Second Circuit in *Reibor International Ltd. v. Cargo Carriers (KACZ-Co.) Ltd.*, 759 F.2d 262 (2d Cir. 1985) is mistakenly often cited for the proposition that after-acquired property is not subject to a Rule B attachment.  In *Reibor*, the plaintiff served a PMAG on a garnishee that held no funds of the defendant at the time of service of the PMAG.  Funds of the defendant later arrived and were dispersed before the plaintiff was able to re-serve the bank.  The *Reibor* Court held that each such service by the Plaintiff was ineffectual since there were no funds actually in the hands of the garnishee at the time of service.  Thus, later-arriving funds could not revive the earlier ineffective service.  Because it did not need to address the issue, the *Reibor* Court did not opine as to whether a ***successful*** service of a PMAG (*i.e.*, service on a garnishee when the defendant's funds are actually in the hands of the garnishee) also reaches so called "after-acquired property" following into the hands of that garnishee.

This question was recently affirmatively answered in *Ythan Ltd. v. Americas Bulk Transport Ltd.*, 336 F. Supp. 2d 305 (S.D.N.Y. 2004) in which Judge Castel made clear

that the filing of a general appearance does not render ineffective a previously served and valid PMAG. In *Ythan*, after an EFT representing payment from the defendant was attached in the hands of the garnishee intermediary bank, the defendant filed a general appearance. Several days after the appearance was filed, an EFT representing funds being transferred to the defendant from a non-party was restrained by the bank. Defendant asserted that the filing of the appearance rendered the PMAG no longer effective as to the post-appearance acquired property since it claimed that as of the time of the filing it was "found" within the district. Judge Castel rejected this contention holding, "'a levy, once effective, remains effective for at least ninety days.' The subsequent appearance had no effect in eviscerating the already effective attachment, including its post-levy effects." *Id.* at 308, quoting *Reibor*, 759 F.2d at 268.

This result is consistent with Judge Keenan's earlier holding in *Metal Transport Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A.*, 1991 U.S. Dist. LEXIS 2355, at *7 (S.D.N.Y. 1991), in which the Court held that "if the attachment is valid… it includes any 'after-acquired property.'"

When HBC served Bank of America with the PMAG on August 26, 2004, Bank of America reported that it indeed actually held funds belonging to PROTEINAS. HBC served Bank of America again while Bank of America still held those funds, thereby securing the attachment of PROTEINAS funds held by Bank of America, together with any after-acquired funds that fell into Bank of America's hands. *Winter Storm*, 310 F.3d at 374-5, n.7.

Similarly, when HBC served Citibank with the PMAG on September 21, 2004, Citibank reported that it indeed held funds belonging to PROTEINAS. HBC served

Citibank again while Citibank still held those funds, thereby securing the attachment of PROTEINAS funds held by Citibank, together with any after-acquired funds that fell into Citibank's hands. *Id.*

Both the first Bank of America restraint of funds and the first Citibank restraint of funds occurred and were secured by HBC before Defendant PROTEINAS filed its General Appearance on September 23, 2004. Proteinas apparently concedes, as it must, that its voluntary appearance after the effective attachment of its property, its attempt to submit to the exercise of personal jurisdiction by this Court, and its designation of an agent within the District for receipt of service of process, also after attachment, are not sufficient to warrant vacating the attachment of the funds levied prior to its appearance. *Swift & Co. Packers*, 339 U.S. 684, 693 (1950) (an attachment is not dissolved by the subsequent appearance of the defendant.)    Applying the lesson of *Ythan* and *Metal Transport,* all additional funds flowing into the hands of the two garnishees, up to the amount provided in the PMAG, are also subject to attachment.

### E.    An Order of Attachment Remains Effective Until Modified or Vacated

The August 25, 2004 Order, like any court order, is of continuing effect until vacated or modified, or until the matter is resolved amicably or by trial. Nowhere does the Order (or the Rule underlying the Order) provide for any outside limits on the effect of the Order – either by means of expiration after the passing of time alone or by the actions of the defendant in appearing or answering.

This is so because the defendant's post-attachment appearance at most only satisfies one part of the two-prong test for being "found" within the District (the ability to

be served), which itself is only part of the dual purpose of Rule B (the other part being the obtaining of security for a claim).

In the instant case, this Court issued an Order on August 25, 2004 after having been satisfied that the *prima facie* requirements for issue of the order had been met, directing the clerk to issue the PMAG. Accordingly, the Order and PMAG have continuing effect until amended, rescinded or vacated. It is for this reason that PROTEINAS, in the absence of posting suitable alternative security, was required to file the instant motion seeking to have the order vacated.

## CONCLUSION

For all the foregoing reasons, the motion to vacate the attachment should be denied.

Dated: New York, New York
      January 18, 2004

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff
                        HBC Hamburg Bulk Carriers GmbH & Co. KG

                        By: _____
                              Michael E. Unger (MU 0045)
                              Lawrence J. Kahn (LK 5215)

                        80 Pine Street
                        New York, NY  10005
                        Telephone (212) 425-1900
                        Facsimile (212) 425-1901