Page 1

[1]     UNITED STATES DISTRICT COURT
 1      SOUTHERN DISTRICT OF NEW YORK
[2]
 2
[3]     PIONEER TRADING (ASIA PACIFIC)
 3      LTD.,
[4]
 4              Plaintiff,
[5]
 5 v.              04 CIV 5655 (DAB)
[6]
 6      SEYANG SHIPPING COMPANY,
[7]     LTD.,,
 7
[8]             Defendant.
 8
[9]
 9
[10]            August 19, 2004
 10             11:15 a.m.
[11]
 11 Before:
[12]
 12         HON. DEBORAH A. BATTS,
[13]
 13             District Judge
[14]
 14             APPEARANCES
[15]
 15 HEALY & BAILLIE, LLP
[16]        Attorneys for Plaintiff
 16 BY: LEROY LAMBERT
[17]
 17 NOURSE & BOWLES, LLP
[18]        Attorneys for Defendant
 18 BY: ARMAND M. PARE
[19]
 19
[20]
[21]
[22]
[23]
[24]
[25]

Page 2

[1] **THE COURT:** Good morning. Please be seated.
[2]     Pioneer Trading Ltd. versus Seyang Shipping Company
[3] Ltd.
[4]     On behalf of the plaintiff we have Mr. Lambert?
[5] **MR. LAMBERT:** Yes, your Honor. Good morning.
[6] **THE COURT:** And on behalf of the defendant we have
[7] Mr. Pare?
[8] **MR. PARE:** Yes, your Honor.
[9] **THE COURT:** Good morning.
[10]    Now, the issue initially seems to be whether or not at
[11] the time that the plaintiff filed its papers seeking the
[12] garnishment, that indeed the defendant was, quote, not to be
[13] found in the district.
[14]    I have reviewed the plaintiff's papers and the
[15] defendant's papers, and I have seen what the plaintiff did in
[16] ascertaining whether or not the defendant was here, and I have
[17] seen the response of the defendant.
[18]    Now, Mr. Lambert, was there any reason that the
[19] Secretary of State was not served?
[20] **MR. LAMBERT:** Your Honor, we have 120 days to serve
[21] the complaint, and what we were after is quasi in the realm of
[22] jurisdiction, trying to get the property in this District,
[23] and —
[24] **THE COURT:** All right. So, I guess my question is:
[25] What was the basis for that if, indeed, he was, the defendant

Page 3

[1] was found in the district?
[2] **MR. LAMBERT:** The person registered as the corporation
[3] under New York law with the Secretary of State was a New York
[4] corporation of the same name. Our defendant is a Korean
[5] corporation.
[6]     There is no dispute that the defendant is the Korean
[7] corporation and it's an interesting point, but there is simply
[8] no allegation that, say, I will call them Seyang New York is
[9] doing the business of Seyang Korea in this District or New York
[10] at all.
[11]    So, I, frankly — I mean, since I'm the one who did
[12] the affidavit of search, I was tempted just to stop there, as
[13] we say, in the brief. They could have incorporated Smith
[14] Brother's Shipping. It's a separate entity and I am not
[15] alleging veil piercing.
[16] **THE COURT:** You are not alleging veil piercing?
[17] **MR. LAMBERT:** No, I am not, as Seyang New York and
[18] Seyang Korea.
[19] **THE COURT:** Let me hear from Mr. Pare.
[20] **MR. PARE:** We do not think that that is the critical
[21] issue in this case, and the reason for that is that it is not
[22] clear that any funds have been attached by the first round of
[23] attachments. We think that the critical issue in this case is
[24] whether future attachments should be permitted or whether,
[25] instead, the case should be stayed pending arbitration, as

Page 16

[1] That's two things. That gets me to my second point.
[2]   One, is ring the bell, and the second point is as my
[3] noble, my learned colleague, a good friend of mine says, he
[4] called up the 212 number for Seyang Shipping Company, Ltd. He
[5] got a recording that says this is Seyang Shipping Company.
[6] Please a message. No message was left. No inquiry was made.
[7] Where are you located? Is there somebody here I can serve?
[8] That's not sufficient under the due diligence standard under
[9] Dragonfly, under Seawind and the under Gogetter.
[10]   THE COURT: And you are saying because it's a 212 area
[11] code, which is the Southern District, because it did answer in
[12] the name of the company in question and it did say leave a
[13] message, and no message was left, that you are saying that that
[14] should have put the plaintiff on notice that they were present,
[15] that Seyang Shipping Company was present within the district.
[16]   MR. PARE: Yes. And at the very least it put them on
[17] further inquiry notice.
[18]   THE COURT: To leave a message or something?
[19]   MR. PARE: To leave a message and ask, ask a simple
[20] question.
[21]   THE COURT: Okay, all right.
[22]   MR. LAMBERT: Your Honor, may I just —
[23]   THE COURT: Sure.
[24]   MR. LAMBERT: But again, it's nice to hear that, in
[25] effect, Seyang Korea has pierced its own corporate veil with

Page 17

[1] Seyang New York.
[2]   Again, just basic corporate law. Seyang New York is
[3] not Seyang Korea and, as a matter of fact, despite the
[4] contentions Mr. Pare just made, none of the — they presented
[5] no facts, they have not even denied that the 212 number was
[6] ringing in Flushing, New York, not in the Southern District.
[7] There is no office of Seyang New York in this district. The
[8] 212 is simply a tie line. And there is no person in this
[9] district.
[10]   All that Seyang New York had to do to get at a person
[11] in this district is to appoint, fill in the form of the
[12] Certificate of Incorporation and name someone. They didn't do
[13] that.
[14]   And besides Seyang New York is not Seyang Korea.
[15]   THE COURT: All right. Well, Mr. Pare?
[16]   MR. PARE: Once again, your Honor, they don't have to
[17] have a person in New York. They have incorporated in New York.
[18] They are in New York, everywhere in New York. They don't have
[19] to have a person. They don't have to have an office. They
[20] don't even have to do any business. They are here under
[21] Chilean line, the decision of the Second Circuit.
[22]   THE COURT: So that's for purposes of jurisdiction?
[23]   MR. PARE: Yes.
[24]   MR. LAMBERT: But they don't have a physical person in
[25] this District to whom to hand something to.

Page 18

[1]   THE COURT: Are you talking about service?
[2]   MR. LAMBERT: I am talking about service.
[3]   THE COURT: You agree with Mr. Pare that in terms of
[4] jurisdiction, they are present here.
[5]   MR. LAMBERT: Not necessarily, your Honor. Because
[6] that is another point that I would just like to make for the
[7] record.
[8]   The Chilean line case was based on a draft, some
[9] comments for a draft ruling at the time, and now — then
[10] district Judge Lavalle wrote in 1979, in the Integrated
[11] Container Service Case, 476 F.Supp. 119, and the Fifth Circuit
[12] picked up on it in 1981, that Chilean Line is questionable on
[13] that point.
[14]   And, in fact, Judge Lavalle in '79, as a then district
[15] judge, said that service on the Secretary of State in Albany
[16] would not be sufficient for a New York corporation where that
[17] was the only agent for service of process because that's the
[18] Northern District not the Southern District. But ultimately
[19] the key point is there is no physical person in this district.
[20]   THE COURT: But I guess that this is sort of a
[21] wrinkle, because the Secretary of State is directed to send
[22] whatever process received to an address, a name and address in
[23] the Southern District of New York.
[24]   MR. LAMBERT: But again, just by definition, your
[25] Honor, if I had tried to serve Mr. Bach, I'm not sure that that

Page 19

[1] in other circumstances — now it's to their advantage to say
[2] it's good. Obviously, they weren't convinced at the time, or
[3] else he would have named like CT Corporation, like all the
[4] registered agents for service of process in New York do.
[5]   For whatever reason, they were trying to have it both
[6] ways. They were trying to have it many ways. The whole idea
[7] of incorporating a separate corporation, the shell game with
[8] Mr. Bach, and the tie lines to Flushing. I think the orders
[9] that were presented were correctly signed and the attachments
[10] issued thereunder were valid.
[11]   THE COURT: All right. So, it seems to me that there
[12] are enough open factual questions here so that it certainly
[13] appears that at the time that the order was served, and signed
[14] by Judge Hellerstein, that the plaintiff had, indeed, met,
[15] excuse me, its requirements for due diligence, because all of
[16] these issues are being raised again today.
[17]   In terms of whether Seyang Korea and Seyang New York
[18] are the same in terms of whether having a person available in
[19] Queens with a tie line into Southern District of New York is
[20] sufficient for being present in the district, there is also a
[21] question that based on what was in the Certificate of
[22] Incorporation. The Secretary of State would mail, as agent
[23] would mail to this address and to this person's name, but that
[24] person's name did not appear anywhere on the building, and only
[25] by going into the office, inquiring of somebody of either where

Page 20

Mr. Bach, or is someone here handling legal affairs for Seyang Shipping Company, which the plaintiff's position is is asking a bit too much under the circumstances.

I can see that a reasonable person would think that they had gone far enough. And I also understand that Mr. Pare, you must agree that the additional steps required in order to ascertain that they were not in the district could have been obviated by a simple agency by Mr. Bach directly in some place in New York where he could be found — I'm sorry, the Southern District of New York, where he could be found, rather than putting the individuals to these extra steps.

And, I mean, I think it's significant that he's in Queens. The tie line goes to Queens, I assume, the 212 line?

MR. PARE: I'm not sure.

THE COURT: Okay. But do you disagree with Mr. Lambert that it's a tie line?

MR. PARE: I don't think I disagree with it. I'm not sure of all the mechanics of how telephones work.

THE COURT: My question is: You do not, are you disagreeing that should, someone, when someone calls 212 number they are actually making contact with someone out of the Southern District?

MR. PARE: Again, I am not sure of that. I suspect that's the case.

THE COURT: All right. So you can see that with all

Page 21

of these sort of ambiguous situations, that it is not obvious that the defendant is present for purposes of process in the Southern District of New York. And, therefore, I agree that with all of these open questions, that certainly the plaintiff had fulfilled its obligation in terms of getting the order signed by Judge Hellerstein.

Now, at this point, it is the Court's understanding that certainly for purposes of this lawsuit — bear with me just one second.

Mr. Lambert, I am looking at the general appearance and the answer to complaint filed by Seyang, and looking at paragraph three on page two. It seems to me that Seyang Shipping Company Ltd. hereafter, hereinafter referred to as Seyang says that Seyang admits that it is a corporation organized and existing under the laws of Korea.

Are you saying that is not sufficient for them, Korea to be having, that being the company that has answered and appeared in this case?

MR. LAMBERT: Yes, your Honor, if I have understood the question correctly. They have made it clear that Nourse and Bowles is acting on behalf of Seyang Korea, not Seyang New York.

THE COURT: But, again, my difficulty is you are the one making the Seyang New York, Seyang Korea distinction.

MR. LAMBERT: Seyang Korea has come in and said we

Page 22

generally appear. Seyang Korea is still Seyang Korea, not doing business in this district or for that matter anywhere in New York. It wasn't doing business in July. It wasn't doing business today, unless something changes. It's not going to be doing business in the future and that brings us directly to the interesting point.

Because there are, there are a line of cases which are cited by Mr. Pare, most of them older, holding that a general appearance precludes future attachment.

There are cases that we cite on page 12 of our brief that we contend create a difference of opinion in the cases on this point. Because to be found, to be found in the district means both, having a physical person, and to be doing business here. Seyang Korea is simply not doing business here in our view.

The Supreme Court in Swift and Co., Second Circuit, and numerous District Court cases agree that Rule B has two purposes: To secure an appearance, and to assure satisfaction of the claim.

THE COURT: Do you agree at least that the appearance has been secured by this answer?

MR. LAMBERT: That's the next part of my argument that I would like to make.

THE COURT: Okay.

Page 23

MR. LAMBERT: The difficulty in this case arises from the interplay between the purposes of Rule B and the statutes and cases promoting arbitration. Imagine no arbitration clause, then — I don't need Rule B to prosecute a plenary in persona claim on the merits against Seyang Shipping. I'm doing that in London.

And the courts, going back to 1944, the Supreme Court said that you can get an attachment in connection with a claim that is otherwise subject to arbitration, so I mean and all the cases — and I don't think anybody is going to dispute that that's the law, and nobody is asking anybody to revisit that development in the law over the years.

THE COURT: Just refresh my recollection on that. In those cases, at what stage has the attachment been sought vis-a-vis the arbitration?

MR. LAMBERT: They have been allowed at any stage.

THE COURT: Including —

MR. LAMBERT: Including after the arbitration has been commenced.

THE COURT: But prior to a judgement?

MR. LAMBERT: Well, you could also get one subsequent to an award as well.

THE COURT: No. But my question is in those cases, where attachment has been sought in relation to an arbitration, has the attachment been sought and granted at the beginning